

**SIGNED this 3 day of December, 2012.**

*James P. Smith*

**James P. Smith
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| In the Matter of: | : | Chapter 13 |
| | : | |
| PHILLIP JEFFERSON BROWN, | : | |
| | : | |
| Debtor | : | Case No. 12-51926-JPS |

BEFORE

James P. Smith
United States Bankruptcy Judge

APPEARANCE:

    For Debtor:    G. McGregor Jordan, Jr.
                                        McKenney & Jordan
                                        115 Vista Circle
                                        Macon, GA 31204

    For Santander Consumer USA, Inc.  Lisa Ritchey Craig
                                          Anne Temple Wise
                                          McCullough, Payne & Haan, LLC
                                          271 17th Street, N.W., Suite 2200
                                          Atlanta, GA 30363

    For Chapter 13 Trustee:  Tony Coy
               Camille Hope
               Office of the Chapter 13 Trustee
               P.O. Box 954
               Macon, GA 31202

## MEMORANDUM OPINION

This matter presents the issue of whether a debtor, pursuant to a Chapter 13 plan, can use 11 U.S.C. § 506(a) to value a motor vehicle which had been acquired more than 910 days prior to the bankruptcy filing and then surrender that vehicle in full satisfaction of the creditor's claim where the value so determined is equal to or greater than the creditor's claim.

## BACKGROUND

Debtor filed his Chapter 13 case on July 16, 2012. Santander Consumer USA Inc., as assignee of Thor Credit Corp. ("Santander"), asserts a claim in the amount of $36,376.34, secured by a first lien on Debtor's 2006 Keystone Challenger trailer ("RV"). Debtor had purchased and financed the RV more than 910 days prior to filing his bankruptcy case.[1]

Debtor's initial Chapter 13 Plan, filed July 16, 2012, provided for surrender of the RV to Santander. Thereafter, on August 6, 2012, Santander filed a motion for relief from stay seeking to repossess the RV and to exercise its other remedies on the grounds, inter alia, that the plan provided for surrender of the RV.

After a hearing on the motion for relief, the parties submitted a consent order, entered September 4, 2012, granting Santander relief from stay and authorizing Santander "to recover and dispose of the Vehicle in accordance with state law...". The order further provided that "This order does not prejudice Debtor's right to modify the Plan to provide for surrender of the described Vehicle to [Santander] in full satisfaction of the debt." Consistent

---

[1] A motor vehicle that was purchased for the debtor's personal use and financed within 910 days prior to the bankruptcy filing is commonly referred to as a "910 vehicle."

with this proviso, Debtor filed a modified plan on August 30, 2012, which provided that surrender of the RV was in full satisfaction of Santander's claim. Santander objected to confirmation of this plan.

At the confirmation hearing on September 27, 2012, the parties reported that the RV was still in the possession of Santander and had not yet been sold. Debtor argued that this Court should value the RV pursuant to 11 U.S.C. § 506(a)(2). Debtor further argued that the value of the RV so determined would equal or exceed the debt owed to Santander and thus, by surrendering the RV, Santander's claim would be satisfied in full. Debtor argued this met the requirements of 11 U.S.C. § 1325(a)(5)(B).

Santander argued that surrender of collateral was controlled by 11 U.S.C. § 1325(a)(5)(C). Santander argued that section 1325(a)(5)(C) did not allow for a valuation of its collateral under section 506(a). Rather, Santander argued that, under that Code section, it had a right to sell the RV pursuant to the Uniform Commercial Code and its security agreement, apply the proceeds of the sale to the debt and then assert an unsecured deficiency claim for any balance remaining.

The Court continued the confirmation hearing to allow the parties to file briefs on these issues. Those briefs have now been filed.

### **DISCUSSION**

Initially, this Court concludes that surrender of collateral through a chapter 13 plan is governed by section 1325(a)(5)(C), and not by section 1325(a)(5)(B). Section 1325(a) provides, in pertinent part:

> Except as provided in subsection (b), the court shall confirm a plan if-...

4

> (5) with respect to each allowed secured claim provided for by the plan-
> > (A) the holder of such claim has accepted the plan;
> > (B)(i) the plan provides that-
> > > (I) the holder of such claim retain the lien securing such claim until the earlier of-
> > > > (aa) the payment of the underlying debt determined under nonbankruptcy law; or
> > > > (bb) discharge under section 1328; and
> > > (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law; and
> > (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
> > (iii) if-
> > > (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
> > > (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
> > (C) the debtor surrenders the property securing such claim to such holder...

The language and structure of section 1325(a)(5)(B) suggests that it was designed to apply to situations where the debtor retains the collateral and pays for it over time, whereas section 1325(a)(5)(C) addresses situations where the debtor "surrenders the property securing such claim to such holder". As the Eleventh Circuit explained in <u>DaimlerChrysler Financial Services Americas LLC v. Barrett</u> (<u>In re Barrett</u>), 543 F.3d 1240 (2008):

> Under [section 1325(a)], the plan's treatment of an "allowed secured claim" will be confirmed if (1) the creditor accepts the plan [11 U.S.C. § 1325(a)(5)(A)]; (2) the debtor retains the property and makes payments on the claim [11 U.S.C. § 1325(a)(5)(B)]; or (3) the debtor surrenders the

5

>   property to the creditor [11 U.S.C. § 1325(a)(5)(C)].

Id. at 1242.

In arguing that sections 506(a) and 1325(a)(5)(C) cannot be used to satisfy the creditor's entire claim by surrender, Santander relies on a number of cases interpreting the "hanging paragraph" which was added to the end of section 1325(a)(5) by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The "hanging paragraph", which immediately follows section 1325(a)(9), provides:

>   For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910 day period preceding the date of the filing of the petition, and the collateral of that debt consists of a motor vehicle...acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

As the Eleventh Circuit explained in Barrett:

>   The section in question has been called the hanging paragraph because, although it is set forth as a subparagraph following 11 U.S.C. § 1325(a)(9), it is not separately designated by letter or number. Rather, it just "hangs" without ordered designation and without surrounding context. It has been variously referred to by courts as Section 1325(a)(9), Section 1325(a)(*), and as a "hanging paragraph".

Id. at 1241, n.1.

In Barrett, the court considered whether surrender of a vehicle subject to the hanging paragraph satisfied the creditor's claim in full. As the court explained:

>   As courts have widely recognized, the hanging paragraph prevents a bankruptcy court from approving a plan incorporating a "cramdown" when the debtor elects to retain the 910 vehicle. See In re Rodriguez, 375 B.R. 535, 548 (9th Cir. BAP 2007) ("It is apparent that [with the hanging paragraph] Congress intended to take away the right of debtors to reduce their

6

> secured obligations on retained 910 vehicles through the value of the vehicles.") In other words, because the valuation provision of Section 506(a) no longer applies to bifurcate a 910 vehicle claim, a debtor retaining the vehicle must now pay the entire claim and it is to be treated as fully secured. The question in this case, however, is: What happens when the debtor surrenders a 910 vehicle...?

Id. at 1243.

After reviewing the holdings of other circuit courts which had considered the issue,[2] the court concluded:

> A plain reading of the hanging paragraph makes clear that Congress intended to (and did) make Section 506(a) in applicable to a 910 vehicle. In such a situation, we agree with the Seventh Circuit that "by knocking out § 506, the hanging paragraph leaves the parties to their contractual entitlements." See Wright supra, 492 F.3d at 832. Leaving the parties to their contract, and looking to applicable state law, is required by well-established Supreme Court precedent. See, e.g. Butner, supra, 440 U.S. at 48, 99 S.Ct. 914 (explaining that state law determines rights and obligations when the Bankruptcy Code does not provide a federal rule).

Id. at 1246.

Thus, if the RV in question were a 910 vehicle, Barrett would prohibit the valuation and surrender proposed by Debtor. However, the parties in the case at bar have acknowledged that the hanging paragraph does not apply to the RV in question.[3] Accordingly, the holdings of the Eleventh Circuit and other courts interpreting and applying the hanging paragraph are not applicable to the issue presented here.

---

[2] In re Wright, 492 F.3d 829 (7th Cir. 2007); Capital One Auto Finance v. Osborn, 515 F.3d 817 (8th Cir. 2008); In re Long, 519 F.3d 288 (6th Cir. 2008); In re Ballard, 526 F.3d 634 (10th Cir. 2008); Tidewater Finance Co. v. Kenney, 531 F.3d 312 (4th Cir. 2008).

[3] The proof of claim filed by Santander shows that the RV was purchased in 2006, more than 910 days prior to the filing of this Chapter 13 case.

Nevertheless, Santander relies on the reasoning of many of those cases to argue that surrender of the RV removes it from the estate and thus § 506(a) is no longer applicable. For instance, in the case of In re Particka, 355 B.R. 616 (Bankr. E.D. Mich. 2006), the court held that, by surrendering the collateral pursuant to a confirmed plan, the estate's interest in the collateral was terminated. The court, in a pre-BAPCPA case, held:

> Section 506 essentially provides a method of valuing collateral to determine the amount of an allowed secured claim when the estate has an interest in the property...If the estate has no interest in the property that secures a claim, there is no reason to use the valuation process of § 506 to determine the amount of the secured claim. Once the estate has no interest in the property, a secured creditor is free to foreclose upon its secured interest under applicable nonbankruptcy law and apply the proceeds of the sale of the collateral to its claim. The creditor, of course, still retains its right to an allowed unsecured deficiency claim against a debtor under § 502 of the Bankruptcy Code if the debtor remains liable for the deficiency under applicable nonbankruptcy law. In other words, the bifurcation process of § 506 does not, and never did, apply to determine a secured and unsecured portion of a secured creditor's allowed claim when the estate does not have an interest in the property securing such claim. Once a debtor surrenders property to a secured creditor, there is no longer any reason to apply § 506(a) to determine the allowed amount of such creditor's secured claim because the estate no longer holds an interest in the property.

Id. at 624.

Similar reasoning was followed by two district court cases in the Northern District of Georgia. Slocum v. AmeriCredit Financial Services, Inc. (In re Slocum), 2007 WL 1812629 (N.D. Ga. 2007); Silvers v. Wells Fargo Auto Finance (In re Silver), 2007 WL 1812628 (N.D. Ga. 2007). This Court rejects the reasoning of these cases for several reasons.

First, although Santander has possession of the RV,[4] possession alone of a vehicle does not terminate the interest of the estate. That interest is not terminated until the creditor has sold the vehicle pursuant to the Georgia Uniform Commercial Code. Cf. Motors Acceptance Corp. v. Rozier (In re Rozier), 376 F.3d 1323 (11th Cir. 2004)(citing Motors Acceptance Corp. v. Rozier, 278 Ga. 52, 597 S.E. 2d 367, 369 (2004) ("ownership of collateral does not pass to a creditor upon repossession, but remains with the debtor until the creditor complies with the disposition or retention proceedings of the Georgia U.C.C.").[5]

Further, although surrender upon confirmation of a plan would terminate the estate's interest in the RV (See 11 U.S.C. § 1327(b)) and thus arguably make section 506(a) inapplicable, the plan has not yet been confirmed. There is nothing in the Code which would preclude a valuation of the RV under 506(a) as part of the confirmation process and prior to the termination of the estate's interest.

In addition, the Eleventh Circuit did not adopt this line of reasoning in its decision in Barrett. Rather, it reasoned that the application of section 506(a) to the 910 vehicle was removed by statute (i.e. the "hanging paragraph"), thus leaving the parties to their state law and contractual remedies. Of course, since the RV in question is not a 910 vehicle, the hanging paragraph is inapplicable and does not operate to remove the application of section

---

[4] The RV was voluntarily surrendered to Santander in connection with the relief from stay proceedings.

[5] In their briefs, the parties suggested that the RV was sold soon after the initial confirmation hearing. Although this fact is technically not in evidence, it is immaterial to the issue presented. Any argument that the sale would deprive the estate of its interest in the RV and then make 506 inapplicable was waived when the parties agreed in the consent order on relief from stay that relief was granted without prejudice to the right of Debtor to modify his plan to provide for surrender in full satisfaction of Santander's claim.

9

506(a).

Finally, and most importantly, the reasoning that 506(a) becomes inapplicable upon surrender of the collateral is contrary to how courts applied section 506(a) pre-BAPCPA. In determining the standard to be used in valuing collateral under section 506(a), the Supreme Court, in a pre-BAPCPA case, explained:

> As we comprehend § 506(a), the "proposed disposition or use" of the collateral is of paramount importance to the valuation question. If a secured creditor does not accept a debtor's Chapter 13 plan, the debtor has two options for handling allowed secured claims: surrender the collateral to the creditor, see § 1325(a)(5)(C); or, under the cram down option, keep the collateral over the creditor's objection and provide the creditor, over the life of the plan, with the equivalent of the present value of the collateral, see § 1325(a)(5)(B). The "disposition or use" of the collateral thus turns on the alternative the debtor chooses-in one case the collateral will be surrendered to the creditor, and in the other, the collateral will be retained and used by the debtor. Applying a foreclosure-value standard when the cram down option is invoked attributes no significance to the different consequences of the debtor's choice to surrender the property or retain it. A replacement-value standard on the other hand, distinguishes retention from surrender and renders meaningful the key words "disposition or use."

Associates Commercial Corp. v. Rash, 520 U.S. 953, 962, 117 S. Ct. 1879, 1885, 138 L. Ed. 2d 148 (1997).

Both the Eleventh Circuit in Barrett, supra, and the lead opinion by the Sixth Circuit in Long, supra, explained that the Supreme Court thus recognized the applicability of § 506(a) to surrender under § 1325(a)(5)(C) pre-BAPCPA. See Barrett, 543 F.3d at 1242; Long, 519 F.3d at 296. Although the Eleventh Circuit recognized in Barrett that BAPCPA changed the applicability of § 506(a) to surrender of 910 vehicles (543 F.3d. at 1242),

nothing in BAPCPA changes the pre-BAPCPA practice with respect to non-910 vehicles.[6]

Accordingly, this Court holds that Debtor can use § 506(a) to value the RV and require the creditor to recognize that value upon surrender of the RV under § 1325(a)(5)(C).

The next issue raised is the proper standard of value to be applied where the collateral is surrendered. Pre-BAPCPA, the Supreme Court held in Rash that the proper standard was foreclosure value. Rash, 520 U.S. at 962, 117 S.Ct. at 1885. However, BAPCPA added section 506(a)(2), which provides:

> If the debtor is an individual in a case under Chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.

Accordingly, the applicable standard for the RV is replacement value as of the date of the filing of the petition herein.

The Court recognizes that application of section 506(a)(2) will probably result in a smaller, or perhaps no, deficiency claim than would be realized using foreclosure value.[7] Congress could have limited the replacement value standard to only those situations in

---

[6] The Court notes that use of 506(a) to determine the value of surrendered collateral in connection with confirmation of a Chapter 11 plan is commonplace. See, e.g., Sandy Ridge Dev. Corp. v. Louisiana Nat'l Bank (In re Sandy Ridge Dev. Corp.) 881 F.2d. 1346 (5th Cir. 1989), reh'g denied, 889 F.2d. 663; In re Atlanta Southern Business Park, Ltd., 173 B.R. 444 (Bankr. N.D. Ga. 1994).

[7] The court in In re Rodriguez, 375 B.R. at 544, speculated that Congress made section 506 inapplicable to the surrender of 910 vehicles to avoid this result. However, the RV in question is not a 910 vehicle.

11

which the debtor retained the collateral. However, it did not do so and this Court is not at liberty to rewrite the statute.

In his brief, Debtor also addressed the issue of admissibility of NADA reports and the ability of Debtor to give opinion as to value. These issues are not joined at this time. There has been no evidentiary hearing and no objections to the admissibility of evidence have been made. Nevertheless, the Court notes that many courts recognize the use of NADA to establish value of vehicles pursuant to Rule 803(17) of the Federal Rules of Evidence, with appropriate adjustments made for mileage, condition and other factors. See, e.g. In re McElroy, 339 B.R. 185 (Bankr. C.D. Ill 2006). This Court has accepted such evidence in the past. However, NADA is not the only source of evidence on value that would be admissible under the Federal Rules of Evidence and this Court will not speculate as to what those other sources might be.

The Court also notes that Rules 701 and 702 of the Federal Rules of Evidence govern the admissibility of opinion evidence by lay witnesses and experts. Further, the Eleventh Circuit has held that the owner of property is competent to testify regarding its value. Neff v. Kehoe, 708 F.2d. 639 (11th Cir. 1983).

In conclusion, the Court overrules Santander's objection to confirmation and will proceed with a valuation hearing on the RV at the continued hearing on confirmation of Debtor's plan, currently scheduled for December 6, 2012. However, due to the fact that this memorandum opinion is being published only a few days prior to that hearing, the Court will entertain requests for continuances if the parties need additional time to prepare for the valuation hearing.